**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:20-CV-363-RJC-DCK**

| | | |
|---|---|---|
| **NOBLE BOTTLING, LLC, and RAYCAP ASSET HOLDINGS LTD.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| **HULL & CHANDLER, P.A., NATHAN M. HULL, JOSHUA A. KUSHNER, GORA LLC, and RICHARD GORA,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Kushner's Motions To Dismiss (Fed. R. Civ. P. 12(b)(2), (3))" (Document No. 9), filed August 7, 2020; "Defendant Kushner's Request For Transfer Of His Previous Motions To Dismiss Or, In The Alternative, Renewed Motions To Dismiss (Fed. R. Civ. P. 12(b)(2), (3))" (Document No. 45), filed November 12, 2020; and the "Gora Defendants' Motion To Dismiss Plaintiffs' Second Amended Complaint" (Document No. 48), filed December 2, 2020. These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and are now ripe for disposition. In the interests of judicial economy and efficient case management, the undersigned will consider the pending motions to dismiss together in this Memorandum And Recommendation. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that both Defendant Kushner's and the Gora Defendants' motions be denied.

# I. BACKGROUND

Plaintiffs Noble Bottling, LLC ("Noble") and Raycap Asset Holdings, Ltd. ("Raycap") (collectively, "Plaintiffs") initiated this action with the filing of a "Complaint" on July 3, 2020 against Defendants Hull & Chandler, P.A. ("Hull & Chandler"), Nathan M. Hull ("Hull"), Joshua A. Kushner ("Kushner"), Gora LLC ("Gora LLC"), and Richard Gora ("Gora") (collectively, "Defendants"). (Document No. 1).

Plaintiffs' claims arise out of a business transaction between Plaintiffs and Reinhart Holdings LLC ("Reinhart") (through "Mark Williams," allegedly Reinhart's "duly authorized officer"), in which Reinhart was to loan Noble the funds (approximately $55 million) for the formation and start-up of Noble. Id. at p. 5. The facts alleged in Plaintiffs' Complaint are admittedly shocking, particularly as Plaintiffs allege that the fraudulent lending scheme engineered by Reinhart resulted in two Federal Bureau of Investigation ("FBI") arrests and charges of federal wire fraud conspiracy and money laundering on the part of imposters at Reinhart. Id. at p. 15. Relevant here, Noble is allegedly a "beverage co-packaging company," and the Defendants named in its Complaint were each associated in various ways with providing legal representation for the funding operations and loan agreements to launch Noble's business. Id. at p. 1.

In summary, the lending transaction was to proceed as follows: Reinhart would loan Noble the necessary $55 million for start-up operations associated with Noble's business, subject to the condition that Noble first make a deposit into a restricted account at Bank of America "equal to five percent [] of the Loan Amount." Id. at p. 6. There were purportedly certain protections in place—such as Bank of America's promised refund of Noble's deposit to Noble—were Reinhart to fail to lend Noble the agreed-upon $55 million. Id. On account of the "terms of the Loan Agreement and representations…concerning the Restricted Account," Noble entered into a

2

separate agreement with Raycap, which was to provide Noble with the funds for the deposit ($2.765 million). Id. at pp. 2, 7. The terms of Noble's agreement with Raycap required that Noble "provide to Raycap written verification that" the restricted account "was a bona fide Bank of America account," that it was governed by certain Bank of America terms, and that the deposit could not be "withdrawn or transferred by any party other than Noble without Noble's prior express written approval." Id. at p. 7.

Noble "engaged [] Hull & Chandler and, specifically, Hull to represent it in…the financing aspect of the start-up of Noble." Id. at pp. 1-2. Such representation included duties of "protecting Noble in [the lending] transaction, confirming that the transaction was genuine, [and] that the deposit account at Bank of America was legitimate." Id. at p. 2. Given that Raycap would not fund the deposit absent verification about protections on the restricted account, Noble "asked Reinhart to provide the contact information of a Bank of America representative authorized to provide" such verification. Id. at p. 8. Reinhart indicated that "banking regulations and security policies at Bank of America would not permit Bank of America to provide the [verification] directly to Noble and Raycap." Id. Nonetheless, Bank of America allegedly *would* provide such information to Reinhart's legal counsel. Id. Reinhart thus agreed to retain legal counsel to write "an opinion letter to Noble and Raycap" that would satisfy Raycap's verification request. Id. Kushner was the attorney whom Reinhart retained for that purpose. Id. Kushner "issued an opinion letter" which "assured Noble and Raycap" that certain protections were in place with respect to the alleged Bank of America Restricted Account. Id. In reliance upon Defendants' various representations concerning the security of the restricted account, Noble (through Raycap's loan) funded the deposit. Id. at p. 9. Gora and Gora's law firm, Gora LLC, "purported to act as counsel for Reinhart in relation to the Loan Agreement, [and] had at various times represented to

Noble that Reinhart had established the Restricted Account and that the Deposit had been deposited therein." Id. at p. 6. Plaintiffs allege that Defendants' failure to confirm with Bank of America that the restricted account existed resulted in Reinhart's stealing of the $2.765 million deposit. Id. at p. 2, 6, 20, 21.

Defendant Kushner filed the pending "Motions To Dismiss (Fed. R. Civ. P. 12(b)(2), (3))" (Document No. 9) on August 7, 2020. Plaintiffs filed a "Response In Opposition To Defendant Joshua A. Kushner's Motion To Dismiss" (Document No. 14) on August 28, 2020. Kushner filed a "Reply To Plaintiffs' Response To Defendant Kushner's Motion To Dismiss" (Document No. 14) on September 4, 2020.

The Hull Defendants (including both Hull & Chandler and Nathan Hull) filed a partial motion to dismiss (Document No. 22) on September 11, 2020. The undersigned denied the motion as moot in an order dated October 13, 2020 (Document No. 34), on account of the fact that Plaintiffs filed a timely "First Amended Complaint" (Document No. 32) on October 9, 2020.

On October 20, 2020, Plaintiffs filed a "Second Amended Complaint" (Document No. 39). Plaintiffs allege various claims (seven in total) against Defendants for the harms they suffered. Plaintiffs allege a claim for legal malpractice against the Hull Defendants and Kushner (count one), a claim for negligence against the Hull Defendants (count two), claims for breach of fiduciary duty against the Hull Defendants and Kushner (counts three and four), a claim for negligence against Kushner (count five), a claim for fraud against the Gora Defendants (count six), and a claim for negligent misrepresentation against the Gora Defendants and Kushner (count seven). (Document No. 39, pp. 16-23).

On October 27, 2020, the Hull Defendants filed an "Answer To Second Amended Complaint" (Document No. 42). On November 12, 2020, Kushner filed a "Request For Transfer

Of His Previous Motions To Dismiss Or, In The Alternative, Renewed Motions To Dismiss (Fed. R. Civ. P. 12(b)(2), (3))" (Document No. 45) and a "Memorandum In Support…" (Document No. 46). Plaintiffs filed a "Response In Opposition To Defendant Joshua A. Kushner's Request For Transfer Of His Previous Motions To Dismiss Or, In The Alternative, Renewed Motions To Dismiss" (Document No. 47) on November 30, 2020. On December 2, 2020, the Gora Defendants filed a "Motion To Dismiss Plaintiffs' Second Amended Complaint" (Document No. 48), and a "Memorandum Of Law In Support…" (Document No. 49). Plaintiffs filed a "Response In Opposition To Defendant Gora LLC And Richard Gora's Motion To Dismiss" (Document No. 52) on January 15, 2021. The Gora Defendants filed a "Reply To Plaintiff's Response In Opposition To Gora Defendants' Motion To Dismiss The Second Amended Complaint" (Document No. 57) on February 4, 2021. Kushner filed a "Reply In Support Of His Request For Transfer Of His Previous Motions To Dismiss Or, In The Alternative, Renewed Motions To Dismiss (Fed. R. Civ. P. 12(b)(2), (3))" (Document No. 58) on February 9, 2021.[1]

The pending motions to dismiss have now been fully briefed and are ripe for review and a recommendation to the presiding district judge.

## II. STANDARDS OF REVIEW

**Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(2)**

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a
> Rule 12(b)(2) motion, the jurisdictional question thus raised is one
> for the judge, with the burden on the plaintiff ultimately to prove the

---

[1] The Court notes that Kushner's reply brief was filed four days past the deadline of February 5, 2021, per the Court's Order of January 19, 2021. See (Document No. 56). Counsel for Kushner acknowledged the late filing and the oversight. (Document No. 58, p. 2, n.1).

> existence of a ground for jurisdiction by a preponderance of the evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676 (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Indus., Inc. v. Seim S.R.L., 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." Id.

Questions of jurisdiction are answered by a two-step analysis: (1) the Court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the Court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state and is not at issue in the instant case. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (internal

6

quotations and citations omitted). Specific jurisdiction exists when a Court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. <u>Helicopterous Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414 n.8 (1984).

Due process precludes a Court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" <u>New Wellington</u>, 416 F.3d at 294 (citing <u>Mitrano v. Hawes,</u> 377 F.3d 402, 407 (4th Cir. 2004)).

**Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(b)(3)**

When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action. <u>Static Control Components, Inc. v. Intersolution Ventures, Ltd.</u>, 2006 WL 2042900, at *10 (M.D.N.C. July 17, 2006) (citing <u>Plant Genetic Systems, N.V. v. Ciba Seeds</u>, 933 F. Supp. 519, 526 (M.D.N.C. 1996)). Where jurisdiction is founded on diversity of citizenship, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

7

brought." 28 U.S.C. § 1404(a). "The decision to transfer is left to the sound discretion of the trial court." Uniprop Manufactured Housing Commun. Income Fund v. Home Owners Funding Corp. of Am., 753 F. Supp. 1315, 1322 (W.D.N.C. 1990). In determining whether to transfer a case, the plain language of the statute requires that the Court balance the convenience to the parties and witnesses, as well as the interests of justice. Id.

**Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

8

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

### A. Motions To Dismiss For Lack Of Personal Jurisdiction

Both Kushner and the Gora Defendants each assert in their pending motions to dismiss that the Court should dismiss Plaintiffs' Second Amended Complaint for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). (Document No. 11, pp. 5-9); (Document No. 49, pp. 19-24). The undersigned will analyze personal jurisdiction for both Kushner and the Gora Defendants in turn below. With respect to both sets of Defendants, since "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause," the undersigned will only analyze the "single inquiry as to whether the defendant has [] minimum contacts with the forum state" required for the exercise of personal jurisdiction. Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

#### i. Personal Jurisdiction Over Defendant Kushner

Kushner asserts that Plaintiffs fail to establish that the Court has personal jurisdiction over him, as he alleges that the Second Amended Complaint fails each prong of the Fourth Circuit's relevant test. (Document No. 11, p. 6 (citing Perdue Foods, LLC v. BRF S.A., 814 F.3d 185, 189

9

(4th Cir. 2016)).[2]  On the first prong, Kushner alleges that he "did not purposefully avail himself of the privilege of conducting activities in North Carolina – a state he has neither visited nor with which he has any association."  (Document No. 11, p. 7).  So, too, does Kushner assert deficiency on the second prong.  As to "whether Plaintiffs' claims arise out of activities [by Kushner] directed at North Carolina," Kushner seeks to highlight the *non*-North Carolina-centric nature of the parties' identities:

> Plaintiffs – a Delaware entity and a Republic of Cyprus entity – complain that Reinhart – a Delaware entity with a principal place of business in Montana who acted through an owner residing in California – duped them and one of the contributing circumstances may have been a one-page letter that Reinhart retained a California resident and attorney to write.

Id. at p. 7.  Finally, Kushner asserts that the Court need not even reach analysis on the third prong – constitutional reasonableness – "because Plaintiffs failed to satisfy either of the first two prongs of the specific jurisdiction test."  Id. at p. 8.  While seeming to acknowledge that Plaintiffs have a stronger case for exercise of specific jurisdiction over Kushner than the other variant of personal jurisdiction – general jurisdiction – Kushner also dismisses any argument that Kushner's activities "could in any way be deemed to constitute the equivalent of being 'at home' in [North Carolina]." Id. at p. 9.

The undersigned agrees with Kushner that he is not subject to general personal jurisdiction in this Court.  Plaintiffs do not attempt to contend that general jurisdiction applies.  Clearly, Kushner's affiliations are not "so constant and pervasive 'as to render [him] essentially at home in'" North Carolina.  Daimler AG, 571 U.S. at 122 (quoting Goodyear Dunlop Tires Ops., S.A. v.

---

[2] Kushner's renewed motion to dismiss for lack of personal jurisdiction and improper venue "requests that the Court transfer the Motions to Plaintiffs' Second Amended Complaint and consider the Motions in light of Plaintiffs' latest Amended Complaint."  (Document No. 45, p. 2).  The undersigned will consider the renewed motion as incorporating by reference the arguments asserted in Defendant Kushner's earlier motion (Document No. 9) and supporting memorandum (Document No. 11).

10

Brown, 564 U.S. 915, 919 (2011)).  Thus, the Court will focus on the specific jurisdiction analysis.  The test for whether a Court has specific jurisdiction over a non-resident defendant has three prongs: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable."  Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 302 (4th Cir. 2012).  The undersigned will analyze each of the three factors in turn below.

### 1. Purposeful Availment

The first factor in the specific jurisdiction analysis "concerns whether and to what extent 'the defendant purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state.'"  UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 352 (4th Cir. 2020) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)).  "If, and only if, [the Court] find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three [of the specific jurisdiction analysis]."  Consulting Eng'rs Corp., 561 F.3d at 278.  Moreover, what is important is "the *quality* and *nature* of the defendant's connections, not merely the number of contacts between the defendant and the forum state."  UMG Recordings, Inc., 963 F.3d at 352.

The undersigned has concluded that Kushner did purposefully avail himself of the privilege of conducting business in North Carolina.  Kushner cites a number of factors that the Fourth Circuit considers relevant to the purposeful availment analysis – and then suggests that Plaintiffs' Second Amended Complaint "does not allege facts that would support [any of] these factors."  (Document No. 11, p. 7).  What Kushner overlooks, though, is that these are "nonexclusive factors," and the Court's inquiry "is not susceptible of mechanical application."  Consulting Eng'rs Corp., 561 F.3d

at 278. Moreover, "[t]he relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfied due process." English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990).

Kushner's activities certainly constitute sufficient minimum contacts with North Carolina such that he satisfies the purposeful availment prong of the test for specific jurisdiction. He makes efforts in his "Declaration…" to distance himself as much as possible from North Carolina – emphasizing the lack of his ever having been physically present in North Carolina or holding any kind of business presence in North Carolina. See (Document No. 10). Those facts concerning Kushner's "lack of physical presence [in North Carolina]" – while a consideration in the Court's specific jurisdiction analysis – are "not dispositive." English & Smith, 901 F.2d at 39 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) ("[j]urisdiction…may not be avoided merely because the defendant did not *physically* enter the forum State"). Importantly, he sidesteps the fact that is at the heart of this case: the letter that he wrote would be relied upon to initiate the lending transaction that was to fund Noble's start-up operations in North Carolina. As Plaintiffs contend,

> Kushner knew that his Legal Opinion Verification would be relied upon in the State of North Carolina, Defendant Kushner intended his opinion letter to be relied upon in North Carolina by an entity that was setting up a business located in North Carolina, worked with Plaintiff's counsel, Defendant Hull, located in North Carolina, and caused harm and economic loss in North Carolina.

(Document No. 14, pp. 1-2). The Fourth Circuit has "found purposeful availment where a defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." Tire Eng'g & Distrib., LLC, 682 F.3d at 302. Taking the allegations in the Second Amended Complaint as true, "Hull [located in North Carolina] worked closely with Kushner throughout the Legal Opinion Verification process." (Document No. 39, p.

10).  The representations in Kushner's letter were the peak of the slippery slope that resulted in significant economic loss to Plaintiffs – who were trying to start a business in North Carolina. Thus, his letter is an "integral element of the dispute."  Tire Eng'g & Distrib., LLC, 682 F.3d at 302.

Furthermore, just because Kushner was not the one to solicit the business in North Carolina does not mean that he cannot satisfy the purposeful availment prong, for when "minimum contacts are present, that the defendant did not initiate the contacts does not bar a judicial finding of purposeful availment."  Id.  Even though it was Reinhart who reached out to him seeking assistance with the preparation of the verification letter, Kushner knew that his letter would be relied upon in the financing of Noble's business formation activities in North Carolina.  (Document No. 11, pp. 2-3); (Document No. 14, pp. 1-2).  His Declaration does not disavow Plaintiffs' allegation that he knew that the logical benefits flowing from his letter verifying "that the account would have the appropriate restrictions" would occur in North Carolina.  (Document No. 11, p. 2); see (Document No. 10).  Indeed, Kushner knew what he was signing up to do – he knew that his opinion letter would kick off performance of the loan agreement, which had as its essential purpose the funding of the start-up operations of a North Carolina business.  In no way were Kushner's North Carolina contacts "random" or "attenuated" – he was plainly aware of his role in Noble's North Carolina-based business formation process.  Burger King Corp., 471 U.S. at 476 (internal quotations and citations omitted).  Clearly then, Kushner "purposefully directed [his efforts] toward residents of" North Carolina – and thus the purposeful availment prong of the specific jurisdiction analysis is satisfied.  Id.

Moreover, Kushner was on notice via the Restricted Holding Account Instructions that the size of Reinhart's loan to Noble would be substantial – over $55 million.  (Document No. 39-2, p.

3); (Document No. 10-2, p. 1). His verification letter contains reference to such instructions, which indicate the amount of the loan – an unquestionably substantial amount. Kushner, according to Plaintiffs, *intended* that his verification letter facilitate Reinhart's loan agreement with Noble. Although Kushner was not himself a party to the contract with Noble, his verification letter was a condition precedent to execution of the loan agreement. Thus, the fact that he is not a party to the contract is not a barrier to the Court exercising personal jurisdiction over him – for his role in facilitating performance of the contract was unquestionably "significant." (Document No. 14, p. 8). Courts have found that where, as here, "a million-plus-dollar contract…with a North Carolina resident lies at the heart of the litigation, the case for a finding of specific jurisdiction gets stronger." Hanes Cos., Inc. v. Galvin Bros., Inc., 2013 WL 594013, at *12 (M.D.N.C. Feb. 15, 2013); see also Cambata Aviation, Inc. v. Kansas City Aviation Ctr., Inc., 2001 WL 1274426, at *3 (W.D. Va. Oct. 22, 2001) ("[t]he size of the contract is relevant in determining whether" the Court's exercise of personal jurisdiction over the defendant was warranted).

The undersigned thus concludes that Kushner purposefully availed himself of the privilege of conducting activity in North Carolina, thus satisfying the first prong of the specific jurisdiction inquiry. Tire Eng'g & Distrib., LLC, 682 F.3d at 302.

### 2. Plaintiffs' Claims Arise Out Of Kushner's Activities

If the Court finds that Defendant Kushner's relevant activity – preparing the legal opinion verification letter – constitutes "the genesis of this dispute," the second prong of the test for specific jurisdiction will be satisfied under Fourth Circuit case law. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 295 (4th Cir. 2009). When a Defendant's involvement in the facts giving rise to a claim is part of "a seamless series of business transactions" leading to "the filing of the Complaint," the second prong of the specific jurisdiction test is satisfied. Id.

14

Analysis on this second prong of the specific jurisdiction test is similar to the purposeful availment analysis. Undoubtedly, were Kushner *not* to have issued his legal opinion verification letter, Raycap would not have loaned Noble the funds for the deposit, and this lawsuit would not have arisen. Clearly, then, Plaintiffs' claims arise out of Kushner's activities. Tire Eng'g & Distrib., LLC, 682 F.3d at 302.

### 3. Exercise Of Specific Personal Jurisdiction Over Kushner Is Constitutionally Reasonable

It is constitutionally reasonable – within the confines of due process – for a Court to exercise personal jurisdiction over a defendant "if it was reasonably foreseeable that the defendant could be subject to suit [in the forum state]." CFA Inst., 551 F.3d at 296. This prong of the specific jurisdiction test takes various interests into account – "the burden on [Defendant], the interests of [North Carolina] as the forum state, and [Plaintiffs'] interests in obtaining relief." Id. If litigation is "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent," the exercise of specific jurisdiction will not be constitutionally reasonable. Burger King Corp., 471 U.S. at 478 (internal quotations and citations omitted). Due process requires that the exercise of personal jurisdiction comport with "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 463 (1940).

Even where Kushner might "face challenges in defending against litigation in" North Carolina on account of his California residency, "[his] amenability to suit in" North Carolina "comports with the requirements of due process" because Kushner was aware that North Carolina was the state in which Noble was trying to establish itself (and he wrote the legal opinion verification so that those start-up operations could proceed) – and thus he could easily foresee being held accountable for his actions in North Carolina. Id.

15

Thus, as all three prongs of the test for specific personal jurisdiction are satisfied, the undersigned respectfully recommends that Defendant Kushner's motion to dismiss for lack of personal jurisdiction be denied.[3]  Plaintiffs have satisfied their burden of "mak[ing] a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Combs, 886 F.2d at 676.

### ii.    Personal Jurisdiction Over The Gora Defendants

The Gora Defendants contend that neither North Carolina's long-arm statute nor the Constitution confer personal jurisdiction over them.  (Document No. 49, pp. 19-20).  The Gora Defendants first contend that since "Plaintiffs have not alleged that the Gora Defendants maintain continuous and systematic contacts with North Carolina," there is no basis for exercising general jurisdiction over them.  Id. at p. 20.  At least as to this argument on general jurisdiction, the undersigned agrees with the Gora Defendants.  They are clearly not subject to this strain of personal jurisdiction because their contacts with North Carolina do not "render them essentially at home in" North Carolina.  Goodyear Dunlop Tires Ops., S.A., 564 U.S. at 919.

As to specific jurisdiction, though, the analysis is more complex.  The Gora Defendants emphasize their lack of connections to North Carolina – contending that Gora himself is a Connecticut resident and lawyer and that Gora LLC is a company organized under Connecticut law.  (Document No. 49, p. 21).  Furthermore, Gora contends that there are only two possible North Carolina connections in this case ("[a]side from the location of Noble's office") – one, "Noble's legal counsel practice[s] law in North Carolina; and two, "Mr. Gora flew to North Carolina on one occasion after the [date the funds were deposited into the alleged restricted

---

[3] The undersigned points out for clarity that the respectful recommendation is that both Defendant Kushner's present motion (Document No. 45) and the earlier motion to dismiss (Document No. 9) (which is incorporated by reference into the present motion) be denied.

account] and met with Noble for just two hours before returning to Connecticut the same day." Id. These connections, the Gora Defendants contend, are too weak for purposes of specific jurisdiction. They contend that "[i]n allegedly communicating with Noble a handful of times and coming to North Carolina *after* the [date the funds were deposited into the restricted account], the Gora Defendants did not purposefully avail themselves of the privilege of doing business in North Carolina." Id. at p. 22. As with the analysis regarding whether specific personal jurisdiction exists over Defendant Kushner, the undersigned will analyze the three prongs of the specific jurisdiction test in turn below. Tire Eng'g & Distrib., LLC, 682 F.3d at 302.

### 1. Purposeful Availment

Analysis of the first prong of the test for specific personal jurisdiction – purposeful availment – will proceed as to the Gora Defendants in much the same way as the analysis with regard to Defendant Kushner. The undersigned has concluded that the Gora Defendants *did* purposefully avail themselves of the privilege of conducting business in North Carolina. A number of factors support that conclusion. First, just as Defendant Kushner did, the Gora Defendants go to great lengths to attempt to physically distance themselves from the state of North Carolina – emphasizing their connections to Connecticut and performing legal work for a Montana-based client. (Document No. 49, pp. 21-22). But, just as with Defendant Kushner, when the Gora Defendants undoubtedly satisfy other factors integral to the purposeful availment prong, lack of physical presence is, of course, not the end of the road. English & Smith, 901 F.2d at 39. Furthermore, the undersigned finds it difficult to believe – and indeed, in the words of Plaintiffs, it is somewhat "stunning" – that the Gora Defendants attempt to argue that personal jurisdiction is lacking over them. (Document No. 52, p. 8).

17

The Gora Defendants did even more than Kushner on the physical presence front because Gora actually *traveled* to North Carolina to Hull's office to meet with a Noble representative. (Document No. 48-1, pp. 3-4). The undersigned, at this point in the analysis, has not yet resolved the motion to dismiss as to the fraud claim. Thus, the date of the Gora Defendants' trip to North Carolina – on April 11, 2019, after the deposit was made – is immaterial. (Document No. 57, p. 5). Any statements made at the meeting in North Carolina in April 2019 could still form the basis for a fraud claim – that has not yet been resolved. Even if the alleged statements made after the deposit date do not give rise to a cognizable fraud claim, the trip still *relates* to Plaintiffs' claim, and thus, the personal jurisdiction analysis is unaffected. Thus, the Gora Defendants cannot escape the fact that they clearly satisfy one element relevant to the purposeful availment analysis – Gora "made in-person contact with a resident of the State regarding the business relationship." UMG Recordings, Inc., 963 F.3d at 352 (internal quotations and citations omitted).

Not only that, but Gora also had "numerous conversations and worked with Defendant Hull," who was located in North Carolina. (Document No. 52, p. 8). Under the purposeful availment analysis, "the nature, quality, and extent of the parties' communications about the business being transacted" is an important factor for the Court to consider. UMG Recordings, Inc., 963 F.3d at 352 (internal quotations and citations omitted). Here, "Defendant Gora intended his participation to add an air [of] authenticity and reputability to Reinhart, posing himself as competent and experienced legal counsel." (Document No. 52, p. 9). Plaintiffs' Second Amended Complaint details various emails and exchanges with Noble (allegedly from before the deposit was made through July 2019). (Document No. 39, pp. 7, 14-16). Gora, as Reinhart's counsel in the lending scheme, was certainly a key player and "substantially collaborated with a forum resident [both Noble and Hull] and that joint enterprise [his legal representation of Reinhart in the financing

and loan agreement with Noble]" undoubtedly "constituted an integral element of the dispute," thus satisfying the purposeful availment prong. <u>Tire Eng'g & Distrib., LLC</u>, 682 F.3d at 302. Indeed, the handling of, and the resultant fraud associated with, the loan agreement *is* the central dispute in this case. And, as stated in the analysis in the section regarding personal jurisdiction over Defendant Kushner, the large – multimillion – dollar figure in the loan agreement is yet another factor pointing towards satisfaction of the purposeful availment prong. <u>Hanes Cos., Inc.</u>, 2013 WL 594013, at *12; <u>Cambata Aviation, Inc.</u>, 2001 WL 1274426, at *3.

Taking the allegations in the Second Amended Complaint as true, and "draw[ing] the most favorable inferences for the existence of jurisdiction," Plaintiffs are correct that Gora's connection to North Carolina was of a nature, quality, and extent undoubtedly sufficient for minimum contacts purposes. <u>Combs</u>, 886 F.2d at 676. At "various times," Gora allegedly "represented to Noble that Reinhart had established the Restricted Account and that the Deposit had been deposited therein." (Document No. 39, p. 7). These various communications allegedly took place via email over the span of a few months, in which Gora sent Noble various messages representing in some way that the loan transaction was not fraudulent or the deposit would be returned. <u>See</u> <u>id.</u> at pp. 14-15. Plaintiffs' response brief indicates that Noble was "North Carolina situated." (Document No. 52, p. 2). Moreover, simply because such communications were electronic and "originat[ed] from [Gora's] office in Connecticut" is immaterial. "In the modern world, a defendant…might be unable to fly across the country and instead would attempt [to resolve an issue] by email or other mail services[, which]…would themselves be more contacts with the forum state." <u>Relion Mfg., Inc. v. Tri-Pac, Inc.</u>, 2018 WL 3245207, at *10 (W.D.N.C. May 22, 2018). The undersigned thus concludes that the Gora Defendants "deliberately engaged in significant [] business activities" in

North Carolina sufficient to satisfy the purposeful availment prong. UMG Recordings, Inc., 963 F.3d at 352 (internal quotations and citations omitted).

The Gora Defendants further substantiate their unavailing argument by citing to various cases in which personal jurisdiction was lacking "over an out-of-state law firm that represents a client in legal matters in another state." See id. at pp. 23-24. Most of these cases, however, are not analogous to the facts here. In many of the cases that the Gora Defendants cite, personal jurisdiction was lacking because the defendants (attorneys) were representing clients in matters the locus of which occurred outside of the forum state. The attorneys' only connection to the forum state was the fact that their clients were located in the forum state. See, e.g., Sher v. Johnson, 911 F.2d 1357, 1363 (9th Cir. 1990). Not so here. In this case, the Gora Defendants represented Reinhart in connection with a contract in which Reinhart was to loan Noble $55 million to establish a North Carolina business. Undoubtedly, the loan would benefit a North Carolina-based business, and Gora was well aware of such a fact. The connection to North Carolina is not so attenuated as the Defendants insinuate.

The undersigned thus concludes based on the foregoing analysis that the Gora Defendants satisfy the purposeful availment prong for purposes of this Court's exercise of specific personal jurisdiction over them.

### 2. Plaintiffs' Claims Arise Out Of The Gora Defendants' Activities

As stated with respect to the analysis on Defendant Kushner's arguments regarding personal jurisdiction, the second prong of the specific jurisdiction test is whether Plaintiffs' claims arise out of the Gora Defendants' activities. Tire Eng'g & Distrib., LLC, 682 F.3d at 302. This prong is satisfied where the Gora Defendants' activities in some way constitute "the genesis of this dispute." CFA Inst., 551 F.3d at 295. Moreover, "[a] plaintiff's claims [] arise out of activities

directed at the forum state if substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim." Tire Eng'g Distrib., LLC, 682 F.3d at 303.

Plaintiffs allege claims for fraud and negligent misrepresentation against the Gora Defendants, contending that the Gora Defendants not only perpetuated the fraudulent loan scheme by making statements to Noble that were patently untrue regarding the restricted account but also that they continued to make misrepresentations regarding Reinhart's obligations under the loan agreement "in an apparent effort to continue the fraud and delay Noble and Raycap from taking legal action, including [delaying Plaintiffs from] reporting Reinhart and Gora to the authorities." (Document No. 39, pp. 7, 14). Thus, Gora's communications to North Carolina-based Noble and Hull and his trip to North Carolina certainly gave rise to Plaintiffs' claims and were the genesis of this lawsuit. In the undersigned's view, prong two of the specific jurisdiction test is thus unquestionably satisfied.

### 3. Exercise Of Specific Personal Jurisdiction Over The Gora Defendants Is Constitutionally Reasonable

"[F]air play and substantial justice" also do not support the exercise of personal jurisdiction over the Gora Defendants, they argue, for "North Carolina is hundreds of miles away from Connecticut." Id. at p. 24. Respectfully, the undersigned disagrees. It was "reasonably foreseeable" that the Gora Defendants would be subject to suit in North Carolina when the business transaction for which they provided legal representation concerned a start-up setting up operations in North Carolina and where Gora himself traveled to North Carolina to facilitate relevant communications. CFA Inst., 551 F.3d at 296. It is certainly constitutionally reasonable and within

the confines of due process to exercise personal jurisdiction over the Gora Defendants given the circumstances of Plaintiffs' alleged claims.

The Gora Defendants contend in closing that "[t]he fiduciary shield doctrine protects against personal jurisdiction based on contacts resulting from actions taken as an agent." Id. at pp. 24-25 (citing Marine Midland Bank N.A. v. Miller, 664 F.2d 899, 902 (2d Cir. 1981)). Although they note that the Fourth Circuit has not explicitly adopted this doctrine, it has allegedly – in their view – done so "in spirit." Id. at p. 25. The doctrine, they contend, prevents exercise of personal jurisdiction over a defendant whose only contacts with the forum are acts performed on behalf of a principal. Id. The Gora Defendants are, respectfully, incorrect. The Fourth Circuit has actually distinguished the Second Circuit case cited by the Gora Defendants in their brief. According to the Fourth Circuit, the New York long-arm statute at the time of the opinion did not extend "to the outer perimeter allowed by due process." Columbia Briargate Co. v. First Nat. Bank in Dallas, 713 F.2d 1052, 1057 (4th Cir. 1983). Furthermore, the fiduciary shield doctrine "is expressly declared not to be a declaration of constitutional requirements of due process" but rather a principle of statutory construction. Id. at 1058. Thus, the fiduciary shield doctrine enunciated by the Marine Midland Court (that the Gora Defendants cite) has no applicability here where North Carolina's long-arm statute *does* extend to the outer constitutional limits.

As with Defendant Kushner's motion pursuant to Fed.R.Civ.P. 12(b)(2), all three prongs of the test for specific personal jurisdiction are met. The undersigned thus respectfully recommends that the Gora Defendants' motion to dismiss for lack of personal jurisdiction be denied. Plaintiffs have satisfied their burden of "mak[ing] a prima facie showing of" personal jurisdiction. Combs, 886 F.2d at 676.

**B. Defendant Kushner's Motion To Dismiss For Improper Venue**

Kushner argues that the Court should dismiss the claims against him for improper venue because he contends the "case does not fall within any of the categories in § 1391(b)." (Document No. 11, p. 10). He then contends that the case should be dismissed, and not transferred pursuant to 28 U.S.C. § 1406(a), because to transfer the case would not be in the interests of justice. Id. at p. 11. Plaintiffs, on the other hand, contend that venue is proper under 28 U.S.C. § 1391(b)(2), because "a substantial part of the events or omissions giving rise to the claim occurred" in this forum. (Document No. 14, p. 11).

Based on the foregoing personal jurisdiction analysis, the undersigned concludes that venue is proper under 28 U.S.C. § 1391(b)(2). A significant recounting of the North Carolina connections of this case is not necessary here, but it bears mentioning again that Plaintiffs have met their burden to demonstrate that venue is proper in this district. Plaintiffs contend that:

> Kushner knew that his Legal Opinion Verification would be relied upon in the State of North Carolina, Defendant Kushner intended his opinion letter to be relied upon in North Carolina, by an entity that was setting up a business located in North Carolina, worked with Plaintiff's counsel, Defendant Hull, located in North Carolina, and caused harm and economic loss in North Carolina.

(Document No. 14, p. 2). Furthermore, the deposit funds – which Plaintiffs contend were stolen – were to "be transferred to a restricted bank account purportedly established by Reinhart at Bank of America, which is headquartered in North Carolina." Id. at pp. 1-2. The facts that the loan agreement related to the start-up operations for a business to be located in North Carolina, that Bank of America – headquartered in North Carolina – was the bank that was *supposed* to be holding the alleged restricted account that Kushner failed to investigate more thoroughly, and that Kushner communicated with Hull – a North Carolina attorney – all indicate that a "substantial" part of the events giving rise to Plaintiffs' claims occurred (or should have occurred) in North Carolina. See Ciena Corp. v. Jarrard, 203 F.3d 312, 318 (4th Cir. 2000) (holding that the place

23

where injury is "sustained" is an appropriate venue); Ferro Prods. Corp. v. Cattrell Cos., Inc., 2015 WL 5721605, at *4 (S.D. W. Va. Sep. 29, 2015) ("where [] negotiations occur, venue can be proper in both districts from which communications are sent").

The undersigned therefore respectfully recommends that Kushner's motion to dismiss for improper venue under Rule 12(b)(3) be denied.

### C. Gora Defendants' Motion To Dismiss For Failure To State A Claim

With respect to the fraud and negligent misrepresentation claims, the Gora Defendants make several arguments for why these claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). The undersigned will analyze those various arguments below.[4]

### i. Fraud Claim

In order to allege a claim for fraud under North Carolina law, "the plaintiff must establish that the defendant (1) made a false representation of material fact, (2) knew it was false (or made with reckless disregard of its truth or falsity), and (3) intended that the plaintiff rely upon it. In addition, (4) the plaintiff must be injured by reasonably relying on the false representation." Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999). Furthermore, in order to satisfy Fed.R.Civ.P. 9(b)'s particularity requirement, a plaintiff must "at a minimum[] describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (internal quotations and citations omitted). In short form, Plaintiffs' Second Amended Complaint must allege the "who, what, when, where, and how of the alleged fraud." Id. The purpose of the particularity requirement ensures

---

[4] The Gora Defendants make several arguments in support of their contention that the fraud and negligent misrepresentation claims should be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The undersigned will not analyze every one of the Gora Defendants' arguments.

that a defendant is provided notice "of its alleged misconduct," and that the goals "of preventing frivolous suits, of eliminating fraud actions in which all the facts are learned after discovery, and of protecting defendants from harm to their goodwill and reputation" are ensured. Beam Construction Co., Inc. v. Allied World Specialty Ins., Inc., 2017 WL 5158712, at *2 (W.D.N.C. Nov. 7, 2017) (quoting United States *ex rel.* Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013)).

When the allegation of fraud relates to a contractual obligation, "merely failing to carry out a promise in contract 'does not support a tort action for fraud.'" Swift Beef Co. v. Alex Lee, Inc., 2018 WL 792071, at *4 (W.D.N.C. Feb. 2, 2018) (quoting Strum v. Exxon Co., U.S.A., 15 F.3d 327, 331 (4th Cir. 1994)). Where the allegation of fraud is that a defendant did not fulfill its contractual obligations, the fraud claim will only survive where "the promisor had no intention of carrying [the contractual obligation] out at the time of the promise, since this is a misrepresentation of material fact." McKinnon v. CV Indus., Inc., 713 S.E.2d 495, 503 (N.C. Ct. App. 2011). In alleging specific intent with regard to failure to perform a contractual obligation "[m]ere generalities and conclusory allegations will not suffice." Swift Beef Co., 2018 WL 792071, at *4 (quoting Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003)).

The Second Amended Complaint outlines various alleged representations that Gora made to Plaintiffs at various times. The undersigned will analyze the various alleged statements in turn.

First, the Gora Defendants argue that Plaintiffs' fraud claim against them "fail[s] to identify the time, place, and contents of any false representations, along with how each Plaintiff reasonably and detrimentally relie[d] thereon," thus failing to satisfy the particularity requirements of Fed.R.Civ. P. 9(b). (Document No. 49, p. 8). On this first argument, at least as to the pre-deposit representation, the undersigned does have doubts about whether the particularity requirements for

a fraud claim are satisfied, but will decline for now to reach a conclusion on this point. The only alleged representation that Plaintiffs contend Gora made to Noble prior to the deposit is contained in paragraph 33 of the Second Amended Complaint. The Second Amended Complaint indicates that Gora "had at various times represented to Noble that Reinhart had established the Restricted Account and that the Deposit had been deposited therein." (Document No. 39, p. 7). Plaintiffs contend that "[w]ithout the representation by Gora that the Restricted Account was in fact established and verified by Gora, Raycap would not have made the Deposit into the Restricted Account." (Document No. 52, p. 13). The Gora Defendants point out that the Second Amended Complaint "omit[s] an important fact," namely, "the date of the [d]eposit into the [r]estricted [a]ccount." (Document No. 57, p. 3). Nonetheless, they indicate that Plaintiff's Exhibit 4 to the Second Amended Complaint suggests that March 1, 2019 was presumably the date that the deposit was made. Id.

The Second Amended Complaint then alleges a variety of statements that Gora allegedly made to Noble between the end of April 2019 and July 2019. (Document No. 39, pp. 14-15). These statements related to both Reinhart's intentions regarding funding the $55 million loan and the return of the $2.765 million deposit given the failure to fund the loan. Id. As to each of these statements, the particularity requirement is certainly satisfied – the dates of the emails are provided, and there are direct quotations from the emails from Gora to Noble. Id. Moreover, the elements for a claim of fraud under North Carolina law are satisfied. There was a false representation of a material fact – that Reinhart was either (1) funding the loan; or (2) making efforts to return the deposit – and there are sufficient allegations in the Second Amended Complaint of Gora's scienter. In paragraph 71 of the Second Amended Complaint, Plaintiffs allege that "Gora had actual knowledge that…Reinhart and Williams had committed a fraud on Noble." Id. at p. 15.

Furthermore, Plaintiffs imply in a separate paragraph of the Second Amended Complaint what Gora was standing to gain from fraudulently misrepresenting Reinhart's actions – since "Mark Williams owed Gora more than $750,000 in attorneys' fees…[Gora told Noble] he needed to assist Mark Williams and Reinhart in completing the transactions." Id. at p. 16.

Nonetheless, on the required element that the Plaintiffs prove that they were injured by the alleged misrepresentation, the Gora Defendants contend that Plaintiffs' fraud claim fails. Food Lion, Inc., 194 F.3d at 512 (indicating that an element for a successful fraud claim under North Carolina law is injury through reasonable reliance). The Gora Defendants, respectfully, are incorrect. The undersigned is persuaded that at this stage, on a motion to dismiss, Plaintiff has sufficiently alleged the minimum elements necessary to state a fraud claim and put Defendants on notice of the claims against them, certainly "nudg[ing] their claims across the line from conceivable to plausible." See Bell Atlantic Corp., 550 U.S. at 570. Plaintiffs sufficiently allege detrimental reliance by contending that they "relied on Gora's false statements that the Restricted Account had been established by Reinhart and without this representation, the Deposit never would have been made…and Plaintiffs would not have lost $2,765,000." (Document No. 52, p. 13). After the deposit was made, Plaintiffs detrimentally relied by "not taking legal action" since Gora's statements "continu[ed] to conceal the fraud and delay." Id. at p. 14. Plaintiffs essentially allege that they were lulled by the Gora Defendants' statements into *not* acting – thereby reasonably relying upon such statements and satisfying the fourth fraud element. See Christopher's Arizona Transp. Serv., Inc. v. Duncan, 217 F.3d 838 (4th Cir. 2000) ("North Carolina courts have acknowledged that reasonable reliance can be proved by acting or by 'refraining from action' because of the fraudulent misrepresentation").

As Plaintiff argues, they "have alleged with particularity[] the false representations made by Defendants to Plaintiffs, that these misrepresentations were calculated, intended to, and did deceive Plaintiffs, for the benefit of Defendants, resulting in damages. Plaintiff has alleged specific communications, made by Gora on exact dates that Gora made those communications and to whom." (Document No. 52, p. 15). The Fourth Circuit instructs that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). The undersigned is satisfied that both of those prongs have been met, counseling in favor of recommending denial of the pending motion to dismiss Plaintiff's fraud claim. Thus, the undersigned respectfully recommends that the Gora Defendants' motion to dismiss Plaintiff's fraud claim pursuant to Rule 12(b)(6) be denied so that this claim can proceed to discovery for further development of the underlying facts.

### ii.    Negligent Misrepresentation Claim

In order to state a successful claim for negligent misrepresentation under North Carolina law, Plaintiffs must allege that they "(1) justifiably relied to their detriment on (2) information prepared without reasonable care (3) by a person who owed the relying party a duty of care." Suntrust Mortg., Inc. v. Busby, 651 F. Supp. 2d 472, 485 (W.D.N.C. Aug. 25, 2009). Rule 9(b)'s particularity requirement applies with equal force to a claim for negligent misrepresentation – just as it does to fraud claims. Carlton v. First Tennessee Bank Nat'l Assoc., 2020 WL 1228482, at *8 (W.D.N.C. Mar. 12, 2020) ("[the] heightened requirements [of Rule 9(b)] apply equally to a claim for negligent misrepresentation" (citing Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 727 (M.D.N.C. 2015)); Levy v. Infilaw Corp., 2017 WL 3573825, at *5 (W.D.N.C.

Aug. 17, 2017) ("[a] claim of negligent misrepresentation is likewise subject to Rule 9(b)'s heightened pleading standard").

Given the similar pleading standards for a fraud claim and a negligent misrepresentation claim, Plaintiffs' negligent misrepresentation claim must survive for the same reasons that Plaintiffs' fraud claim should survive the motion to dismiss. The undersigned will not recount each of those reasons here, given the similarity in pleading standards and the discussion in the fraud claim section regarding Plaintiffs' justifiable reliance on the Gora Defendants' misrepresentations. Each of the alleged statements that Plaintiff contends the Gora Defendants made to them "purporting to show the movement of millions of dollars [and the] return [of] Noble and Raycap's $2,765,0000" were purportedly "prepared without any care, let alone reasonable care." (Document No. 52, p. 14); see (Document No. 39, pp. 14-15).

Furthermore, adopting the North Carolina Supreme Court's broad interpretation of who owes a duty of care in the negligent misrepresentation context, the Gora Defendants undoubtedly are covered and owe such a duty here. See Raritan River Steel Co. v. Cherry, Bekaert & Holland, 367 S.E.2d 609, 617 (N.C. 1988) ("liability should extend not only to those with whom [the professional] is in privity or near privity, but also to those persons, or class of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely"); see also Pearson v. Gardere Wynne Sewell LLP, 814 F. Supp. 2d 592, 607 (M.D.N.C. 2011) (collecting cases from North Carolina state courts where a duty to act in a certain way extended from an attorney for an opposing party in an arm's length transaction to plaintiffs "because the defendant attorneys undertook to provide legal advice, services, or opinion directly to the plaintiffs for the purpose of inducing the plaintiffs to enter into a transaction with their clients, thus acting

29

in a way that directly affects the plaintiffs").  The North Carolina Supreme Court's standard is taken from the Restatement (Second) of Torts, which indicates:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS: INFORMATION NEGLIGENTLY SUPPLIED FOR THE GUIDANCE OF OTHERS § 522 (AM. LAW. INST. 1977).  Here, the Gora Defendants undoubtedly – taking Plaintiff's allegations as true – "made various misrepresentations…that induced Noble to enter into the Loan Agreement with Reinhart, Noble and Raycap to enter into the Funding Agreement, and Raycap to make the Deposit into the Restricted Account."  (Document No. 39, p. 22).  Plaintiffs contend that "Defendant Gora intended his participation to add an air [of] authenticity and reputability to Reinhart, posing himself as competent and experienced legal counsel."  (Document No. 52, p. 9).  Moreover, the Gora Defendants clearly had a pecuniary interest – as Plaintiffs allege, "Gora made these misrepresentations and omissions for the purpose of…ultimately [benefiting] himself in order to be paid hundreds of thousands of dollars in 'legal fees.'"  (Document No. 39, p. 22).

The undersigned therefore concludes that Plaintiff has plausibly alleged that the Gora Defendants had a duty of care with respect to Plaintiffs and failed to exercise that care reasonably. Plaintiffs have furthermore adequately alleged justifiable reliance on such misrepresentations. Thus, the undersigned respectfully recommends that the Gora Defendants' motion to dismiss Plaintiffs' negligent misrepresentation claim be denied.

30

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the "Gora Defendants' Motion To Dismiss Plaintiffs' Second Amended Complaint" (Document No. 48) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that "Defendant Kushner's Request For Transfer Of His Previous Motions To Dismiss Or, In The Alternative, Renewed Motions To Dismiss (Fed. R. Civ. P. 12(b)(2), (3)) (Document No. 45) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that "Defendant Kushner's Motions To Dismiss (Fed. R. Civ. P. 12(b)(2), (3)) (Document No. 9) be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: May 20, 2021

David C. Keesler
United States Magistrate Judge