IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00363-KDB-DCK

| | |
|---|---|
| NOBLE BOTTLING, LLC AND RAYCAP ASSET HOLDINGS LTD., <br><br>　**Plaintiffs,**<br><br>　v.<br><br>GORA LLC, ET AL.,<br><br>　**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant Gora, LLC and Richard Gora's Motion to Strike Expert Testimony of Andrew A. Manley (Doc. No. 127). The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **DENY** the motion, with leave for these Defendants to challenge particular portions of Mr. Manley's testimony, if offered at trial.

## I.　LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *United States v. Wilson*, 484 F.3d 267, 274-75 (4th Cir. 2007). Under Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

1

Fed. R. Evid. 702. The proponent of the testimony must establish its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc*., 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 592 n. 10 (1993)).

In applying Rule 702, the Court's role has been described as a "gatekeeper" to assess if "the opinion is relevant to the facts at issue" and to examine "whether the reasoning or methodology underlying the expert's proffered opinion is reliable." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert,* 509 U.S. at 592); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (the District Court serves as a gatekeeper to assess whether the proffered evidence is "relevant" and "reliable."). Importantly, however, the gatekeeper function does not require that the Court "determine that the proffered expert testimony is irrefutable or certainly correct" because expert testimony is "subject to testing by 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (quoting *Daubert*, 509 U.S. at 596).

There is no "mechanistic test for determining the reliability of an expert's proffered testimony; on the contrary, 'the test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *Peters-Martin v. Navistar Int. Trans. Corp*., 410 Fed. Appx. 612, 617 (4th Cir. 2011) (quoting *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007)). The nature of the expert testimony is a critical factor in that inquiry. In this case, the challenged testimony is not strictly scientific in nature, but rather experiential. As the Fourth Circuit noted in *Wilson*, "experiential expert testimony ... does not 'rely on anything like a scientific method.'" *Wilson*, 484 F.3d at 274 (quoting Fed. R. Evid. 702). As a result, it is not characterized by

"falsifiability, or refutability, or testability" like purely scientific testimony. *Id*. (quoting *Daubert*, 509 U.S. at 593).

Nevertheless, the court retains a gatekeeping role "to 'make certain that a [non-scientific] expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Cooper v. Smith & Nephew, Inc*., 259 F.3d 194, 200 (4th Cir. 2001) (citing *Kumho Tire,* 526 U.S. at 152); *see In re Zetia (Ezetimibe) Antitrust Litig*., No. 2:18-MD-2836, 2021 WL 6690337, at *2–3 (E.D. Va. Aug. 16, 2021). Thus, an experiential expert must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (quoting Fed. R. Evid. 702 Advisory Committee Note) (alterations in original).

## II. FACTS AND PROCEDURAL HISTORY

The claims in this action arise out of Reinhart Holdings LLC's ("Reinhart") agreement to lend Plaintiff Noble Bottling LLC ("Noble") approximately $55 million for Noble's formation and start-up of a bottling plant. (Doc. No. 105). As part of that lending agreement, Noble was required to deposit 5 percent of the loan amount, 2.765 million dollars, in a restricted Bank of America account as security for the loan. *Id*. Plaintiff Raycap Asset Holding Ltd. ("Raycap") executed an agreement with Noble to fund the deposit. The loan was never made, and the deposit was ultimately stolen by Reinhart. *Id*. The Defendants, in various roles and to varying degrees, allegedly participated in verifying to the Plaintiffs the authenticity and security of the restricted Bank of

3

America account. Relevant to these motions, Richard Gora and his law firm, Gora LLC ("Gora") purported to act as "counsel for Reinhart in relation to the Loan agreement." *Id.*[1]

Plaintiffs filed their original complaint on July 3, 2020, seeking to recoup the loss of their funds. *Id.* On September 29, 2022, Plaintiffs filed a "Third Amended Complaint" ("TAC") (Doc. No. 105), which is now the operative complaint. In the TAC, Plaintiffs allege claims for fraud and negligent misrepresentation against the Gora Defendants. *Id.* Specifically, Plaintiffs allege that Gora represented to Noble that Reinhart had established the restricted Bank of America account and that the $2.765M had been deposited. *Id.* at ¶ 21.

On September 30, 2022, Plaintiffs designated Andrew Manley as a retained testifying expert to provide testimony related to certain customs and practices among commercial lenders.[2] Mr. Manley has testified that he is a Managing Director of Berkely Research Group, LLC ("BRG"), "a global consulting firm specializing in corporate finance, strategy and operations, and dispute resolutions" and that he has "approximately thirty-five (35) years of financial, investment management, and commercial real estate industry experience with a background in the underwriting, structuring, and asset management of loans and equity investments and in the structuring, formation, and management of private equity funds and ventures." Further, he claims to have "been involved as both a principal and as an advisor in debt and equity transactions, venture formations, asset and loan sales and loan acquisition aggregating more than $15 billion." Mr.

---

[1] Plaintiffs have settled their claims against the Defendants other than Gora, who are the only remaining Defendants.

[2] In particular, Mr. Manley was asked "to opine upon customs and practices among commercial lenders with respect to deposits that are customarily required upon the execution of term sheets, letters of intent, or other similar form documents that are typically engaged in prior to formal loan documentation and closing" and "to opine on the use and treatment of those deposits in the event that the loan or loans in question (i) close and fund, or (ii) do not close and fund."

4

Manley opined in his report that "the amount of the deposit required by Reinhart and funded by Noble exceeds the expenditures that would customarily be incurred by a lender in the underwriting, due diligence, and documentation of a commercial loan." *See* Doc. No. 128-2 at pp. 1-3. Thus, he concluded in his report that it was "not a custom, practice, or typical for a good faith or expense deposit to equal the $2,765,000 (or 5% of the loan amount) magnitude of the deposit required by Reinhart." *See id*. at p. 5.

In their pending motion to strike, Gora asks the Court to not permit Mr. Manley to testify on the grounds that he did not read or review the loan agreement at issue and does not "identify the nature or source of any specific industry customs, practices, or standards" nor does he cite "standards, guidelines, or publications of any kind." *See* Doc. No. 128. The motion is fully briefed and ripe for the Court's decision.

### III. DISCUSSION

As explained above, under FRE 702, a court considering the admissibility of expert testimony exercises a gate-keeping function to assess whether the proffered evidence is sufficiently relevant and reliable. "Relevant evidence, of course, is evidence that helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *Nease v. Ford Motor Co*., 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. 579, 591 (1993)). "Rule 702 was intended to liberalize the introduction of relevant expert evidence." *Westberry*, 178 F.3d at 261 (citing *Cavallo v. Star Enter*., 100 F.3d 1150, 1158-59 (4th Cir. 1996)). And, again, the Court's gatekeeping function does not extend to a determination of the merits of the opinion in the context of the claims presented, which must ultimately be decided by the jury, after being tested by "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'"

*Id*. (citation omitted) (quoting *Daubert*, 509 U.S. at 596); *see EarthKind, LLC v. Lebermuth Co. Inc*., No. 519CV00051KDBDCK, 2021 WL 2226492, at *3 (W.D.N.C. June 2, 2021).

The subject of Mr. Manley's testimony – the customary amount and use of a pre-loan closing deposit such as the one at issue here – is relevant to Plaintiffs' claims that Defendants knew or should have known that the deposit was part of a scheme to defraud Noble. Indeed, Gora does not claim otherwise. Rather, Gora challenges the "reliability" of Mr. Manley's testimony.

With respect to reliability, the thrust of Rule 702 is simply to protect the jury from "evidence that is unreliable for reasons they may have difficulty understanding." *Quality Plus Servs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*., No. 3:18-cv-454, 2020 WL 239598, at *13 (E.D. Va. Jan. 15, 2020) (quoting 29 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 6270 (2d ed. 2019)); *see also In re Zurn Pex Plumbing Prods. Liab. Litig*., 644 F.3d 604, 613 (8th Cir. 2011) ("The main purpose of Daubert exclusion is to protect juries from being swayed by dubious testimony."). Further, as discussed "[a] district court's reliability determination does not exist in a vacuum, as there exist meaningful differences in how reliability must be examined with respect to expert testimony that is primarily experiential in nature as opposed to scientific." *Wilson*, 484 F.3d at 274.

While Federal courts have consistently held that it is typically improper for a court to rely on expert testimony for the purposes of interpreting certain terms and/or clauses of a contract, courts may allow an expert to testify regarding custom and usage of an industry when such an explanation would be helpful to the jury. *See, e.g., Romeo v. Antero Resources Corp.*, 1:17CV88, 2021 WL 215494, at **3-4 (N.D. W. Va. Jan. 21, 2021) (preventing an expert from opining on the interpretation of the royalty provisions in the Class Leases, but allowing him to "explain terms of art in the oil and gas industry, and to describe certain customs and usage within that industry, [as]

6

such testimony [would] aid the jury's understanding of a complex industry and is admissible"); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2021 WL 6690337, at *4 (E.D. Va. Aug. 16, 2021); *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, No. 4:16-cv-187, 2018 WL 4169282, at *14 (E.D. Va. Jan. 12, 2018) (allowing expert testimony "regarding general customs, practices, and standards of the insurance industry").

Gora alleges that Mr. Manley's testimony is inadmissible under Rule 702 because he allegedly lacks a reliable methodology, basing their argument on the non-dispositive factors for courts to consider outlined in *Daubert*. *See* Doc. No. 128 at p.6. But an experiential expert like Mr. Manley is not required to "'rely on anything like a scientific method.'" *Wilson*, 484 F.3d at 274.[3] Instead, the governing test is whether Mr. Manley can "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Id.* The Court finds that Plaintiffs have made a sufficient showing to allow Mr. Manley to express his opinion about the customs and practices related to the amount and use of good faith deposits in connection with pre-loan closing documents.

Mr. Manley has 35 years of relevant experience, including numerous transactions involving good faith deposits, which he testified led to his conclusions on industry customs. The length and breadth of his experience along with the information he considered explains how he reached his conclusions, why his experience is sufficient and how it applies to this action. Gora contends that Mr. Manley's failure to review the particular loan agreement between Noble and Reinhart and assumptions as to certain facts based on Plaintiff's operative Complaint make his opinions

---

[3] As explained in *Wilson*, this does not lead to a conclusion that "experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." *Id.*

7

unreliable. However, Mr. Manley does not purport to offer an opinion on that specific agreement; rather, his opinion expressly relates solely to what he believes to be the industry custom with respect to deposits. Further, experts may rely on the representations of parties or their counsel as to underlying facts in reaching their conclusions (so long as those facts have some support in the record).[4]

On cross-examination Gora can point out to the jury what Mr. Manley did and did not review and/or rely on in reaching his opinion and then, at the appropriate time, argue their view as to why that matters with respect to their liability. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (mere "weaknesses in the factual basis of an expert witness' opinion ... bear on the weight of the evidence rather than on its admissibility." (citation omitted)). But Mr. Manley must be permitted to first express his opinion as to industry customs and practices under Rule 702.

Finally, in their Reply brief, Gora argues that Mr. Manley should not be allowed to express an opinion about what Mr. Gora knew or should have known as a lawyer allegedly handling the transaction for Reinhart. Mr. Manley is admittedly not a legal expert and in fact has disclaimed any intent to offer opinions about Mr. Gora's duties or knowledge as a lawyer. However, to the extent he purports to do so in any testimony at trial, Gora may certainly challenge the propriety of such testimony under Rule 702. *See Mountain Valley Pipeline, LLC v. 0.32 Acres of Land Owned by Terry*, No. 7:21-CV-00099, 2022 WL 4091860, at *4 (W.D. Va. Sept. 7, 2022), citing *Shreve*

---

[4] *See Johnson v. Baltimore Police Dep't*, No. CV SAG-18-2375, 2022 WL 2209066, at *7 (D. Md. June 21, 2022) (Court's analysis focuses on experts' methods, not their conclusions, but an expert opinion that relies on "assumptions which are speculative and not supported by the record," is inadmissible). However, Gora does not challenge the operative Complaint's allegations regarding the nature of the transaction and amount of the loan and required deposit as evidenced by the loan agreement and other transaction documents.

*v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.")

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Defendant Gora, LLC and Richard Gora's Motion to Strike Expert Testimony of Andrew A. Manley (Doc. No. 127) is **DENIED**, without prejudice to further challenge to his testimony at trial as set forth in this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: January 4, 2023

Kenneth D. Bell
United States District Judge