IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00363-KDB-DCK

| | |
|---|---|
| **RAYCAP ASSET HOLDINGS LTD AND NOBLE BOTTLING, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**GORA LLC AND RICHARD GORA,**<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendants Gora LLC, and Richard Gora's Motion for Summary Judgment. (Doc. No. 174). The Court has reviewed the Motion, the parties' briefs and exhibits and oral argument from the parties' counsel on April 13, 2023. For the reasons discussed below, the Court will **GRANT** these Defendants' Motion for Summary Judgment.

I.      FACTUAL BACKGROUND

In late 2018, Noble Bottling, LLC sought to establish a beverage co-packing facility in North Carolina. Noble hired Hull & Chandler, P.A., and attorney Nathan Hull to guide it through its formation, startup, and financing. Soon after, Noble entered into a Facility Term Letter Agreement with Reinhart Holdings, LLC to fund the start-up of its business operations ("Term Sheet"). *See* Doc. No. 175-1. Reinhart agreed to lend Noble $55,300,000, but required Noble to provide a five percent deposit, about $2,765,000, as a good faith measure ("Deposit"). *Id*.

On February 1, 2019, Noble executed an agreement with Raycap Asset Holdings LTD to obtain $2,765,000 to fund the Deposit ("Funding Agreement"). Under this agreement, Noble

1

promised to repay Raycap the entire $2,765,000 and an additional fee after Reinhart funded Noble's loan. Before funding the deposit, Raycap required verification of: (1) a bona fide Bank of America ("BOA") account; (2) a Bank of America "Restricted Bank Holding Instructions Agreement;" and (3) that the "Restricted Bank Holding Instructions Agreement" prevented the $2,765,000 deposit from being withdrawn or transferred by any party without Noble's prior express written approval. *See* Doc. No. 165 ¶ 32. Before executing the Funding Agreement, Jeremy Lantz, CEO of Noble, spoke with Noble's attorney Nathan Hull and Richard Gora. Gora introduced himself as Reinhart's attorney and indicated that he would be overseeing the Deposit and due diligence needed to complete the transaction. *See* Doc. No. 176-9 pp. 83:3-6.

Soon after executing the Funding Agreement, Reinhart moved the "restricted" bank account to U.S. Bank because it could not provide the required verification for a Bank of America account. Doc. No. 176-9. Gora, Hull, and Lantz at that point discussed the restricted account and wiring instructions required by U.S. Bank. Still, when Hull investigated the U.S. Bank account, he was only able to verify that the account existed but not that the restrictions were in place. *Id*. Ultimately, Reinhart returned to Bank of America to set up the "restricted" bank account.

Richard Gora was unavailable to issue an opinion letter regarding the restricted account verification. *Id*. Reinhart thus contracted with attorney Joshua Kushner to verify the BOA account restrictions. Joshua Kushner in time provided the "Opinion Letter" verifying the restrictions were in place. *Id.* On March 1, Hull emailed Lantz confirming delivery and approving Kushner's Opinion Letter. *See* Doc. No. 176-3. Three days later Raycap wired the $2,765,000 deposit into the Bank of America account. Doc. No. 176-5. Jason Torres or Jordana Weber, fraudsters connected to Reinhart, withdrew $1,510,000 the next day. The account balance reached zero on March 20, 2019. *Id*.

After Raycap wired the Deposit, Gora and Hull negotiated a Secured Loan Agreement which included amendments to the restricted bank account. *See* Doc. No. 176-4. Hull emailed Gora revisions to the Secured Loan Agreement which included removing some terms, removing references restricting Noble's corporate form to an LLC, and editing conflicting terms. Over the succeeding weeks Hull and Gora exchanged several emails about edits to the agreement. In late March, Gora confirmed that Reinhart had approved the final version of the Secured Loan Agreement.

Over the next several months Plaintiffs and their representatives engaged in numerous conversations with Richard Gora to complete the deal. In these conversations, Gora stated, at various times, that diligence was an issue, the transaction needed to clear the Bank of America fraud department, or that the transaction was being processed and should be completed shortly. *See* Doc. No. 176-9; Doc. No. 176-10; Doc. No. 176-11; Doc. No. 176-3. These representations were based on information provided to Richard Gora by Reinhart. In late June 2019, Plaintiffs learned that there had never been a restricted account established with Bank of America. *See* Doc. No. 176-3.

During this period Richard Gora and Reinhart took part in a separate, but similar, deal with Pinnacle Drilling. In that deal Pinnacle Drilling deposited $2,000,000, in a Bank of American restricted bank account that would be returned if Reinhart failed to fund a $52,800,000 loan. *See* Doc. No. 144; Doc. No. 176-15. Reinhart failed to fund this loan but, unlike with the Noble deal, returned the deposit. Plaintiffs maintain that the Pinnacle deal was also fraudulent, and that their Deposit was used to refund Pinnacle Drilling.

Plaintiffs eventually filed suit against Nathan Hull, Hull & Chandler, P.A., Joshua Kushner, Richard Gora, and Gora LLC asserting, among others, claims for fraud and negligent

misrepresentation. *See* Doc. No. 1. Plaintiffs subsequently amended their complaint four times. *See* Doc. Nos. 32, 39, 105, 165. The Defendants have now moved for summary judgment on all claims against them. *See* Doc. No. 174. The motion is now fully briefed and ripe for the Court's consideration.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner Construction Co.*, *et al.*, 946 F.3d 201, 206 (4th Cir. 2019).

A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Rsrv. Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the lack of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely on mere

4

allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

In determining whether summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores,* 888 F.3d at 659 (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)); *see Modern Mosaic* at *2. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

Still, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. And the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

5

## III. DISCUSSION

Plaintiffs have brought claims for fraud and negligent misrepresentation against Defendants arguing that Richard Gora, through his representation of Reinhart, legitimized the fraudulent deal and made various misrepresentations and omissions to influence and induce Plaintiffs to act in a manner that benefited Reinhart and Gora. *See* Doc. No. 165 ¶ 87, 97. Plaintiffs seek at least $2,765,000 in damages and attorneys' fees. *Id*. at ¶ 122. Defendants have moved for summary judgment arguing that Plaintiffs cannot identify: (1) any actions they took relying on Defendants' alleged misrepresentations or omissions; or (2) any misrepresentations made by Richard Gora before they entered into the Term Sheet, Funding Agreement, or funded the Deposit. Defendants therefore conclude that a reasonable jury could not find for Plaintiffs on their claims. The Court agrees.[1]

To succeed on a claim for fraud in North Carolina, a plaintiff must demonstrate that the defendant made: (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *Guilford Cnty. v. Lyon*, 247 N.C. App. 74, 82, 785 S.E.2d 131, 137 (2016). Similarly, negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care. *Brinkman v. Barrett Kays & Assocs., P.A*., 155 N.C. App. 738, 742, 575 S.E.2d 40, 43-44 (2003).

---

[1] In their reply Defendants argue that Plaintiffs inappropriately cite evidence outside the record and impermissibly engaged in subpoena discovery through the related matter, 3:22-cv-83. The Court need not, and does not, reach this issue because summary judgment is appropriate even considering the alleged impermissible evidence. However, the Court cautions Plaintiffs that any wrongful use of subpoena discovery will not be tolerated.

6

Whether Plaintiffs' claims survive summary judgment turns largely on whether they have identified any false statements, omissions, or misrepresentations attributable to Richard Gora that induced them to enter into the Term Sheet, Funding Agreement, or fund the Deposit. They have not. Jeremey Lantz, CEO and corporate representative of Noble, testified that there were no communications with Gora before the Term Sheet agreement and that the only pre-Funding Agreement communications with Richard Gora were: (1) an email about Noble's ability to fund the transaction; (2) a call where Gora introduced himself as Reinhart's attorney; (3) and a conversation between Lantz and Gora about Joshua Kushner's legal opinion verification.[2] *See* Doc. No. 175-2; Doc. No. 175-4, p. 14-15. These statements are immaterial to Plaintiffs' claims for the simple reason that they are truthful. *See id.*, p. 60:17 – 61:10, 61:11-25, 62:1-25, 63:1-25, 64:1-25. Truthful statements cannot establish claims for fraud or negligent misrepresentation. *See Guilford Cnty*, 247 N.C. App. at 82; *Hudson–Cole Develop. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309 (1999). Plaintiffs have also not identified a single post-Funding agreement pre-Deposit misrepresentation made by Richard Gora. *See generally* Doc. No. 176.[3] Simply put, Plaintiffs have not shown that Richard Gora made any false or misleading statement that induced them to entering into these agreements or fund the Deposit.

---

[2] The Fourth Amended Complaint alleges that the legal opinion verification occurred after the execution of the Funding Agreement. Doc. No. 165, ¶ 37. However, Lantz testified that he did not know whether it occurred before or after the execution of the Funding Agreement but recalled that Gora talked "about the legal opinion verification as it relate[d] to the exact document that had already been drafted and sent to [Noble]." *Id.*, 65:1 – 67:14. Even if this conversation took place before the Funding Agreement, Lantz recalled no specific statement or representation by Gora about the Funding Agreement during that call.

[3] In fact, Raycap's corporate representative, Mr. Nikeas testified that Raycap had no communications with Gora prior to the Deposit. *See* Doc. No. 175-2 pp. 74:2-18, 77:1. This alone is sufficient to grant Defendants summary judgment on all claims as to Raycap.

Along with the lack of any relevant misrepresentations, Plaintiffs fail to identify any plausible concealment of a material fact. The closest they get is suggesting Gora had a duty to disclose the Pinnacle Drilling deal. However, Plaintiffs are mistaken. The attorney-client privilege is the oldest known privilege protecting confidential communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citations omitted). Under this privilege, communications made by a client to his attorney are privileged and may only be disclosed to third parties in rare and limited circumstances. *State v. Ballard*, 333 N.C. 515, 428 S.E.2d 178, cert. denied, U.S., 126 L. Ed. 2d 438 (1993); *see e.g.,* Rule 1.6 of the North Carolina Rules of Professional Conduct. And no such circumstance exists here. Attorneys have no duty to "blow the whistle" on their own clients. *See Schatz v. Rosenberg*, 943 F.2d 485, 493 (4th Cir. 1991) (holding that public policy counsels against imposing a duty to disclose its client's alleged misrepresentations and that the better rule is "that attorneys have no duty to 'blow the whistle' on their clients—allows clients to repose complete trust in their lawyers.").[4] Therefore, Richard Gora's failure to disclose a similar, but distinct, transaction and its alleged shortcomings is not a concealment of a material fact.

In brief, Plaintiffs have identified no false statement, misrepresentation, or concealment of material fact by Richard Gora that could have induced them into entering these agreements or funding the Deposit. Accordingly, Plaintiffs' claims fail as a matter of law.

---

[4] While *Schatz* involved Maryland law, like the Maryland law at issue in *Schatz*, North Carolina recognizes a cause of action for fraud based on omission only when there is a duty to disclose. *See Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986) ("A cause of action for fraud is based on an affirmative misrepresentation of a material fact . . . or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose.") (internal citations omitted).

Plaintiffs endeavor to blunt the force of this straightforward conclusion by advancing three flawed arguments.[5] First, Plaintiffs point to Richard Gora's post-Deposit conduct. Yet this argument misses the mark. For starters, any statements or representations made by Richard Gora after the Deposit are irrelevant to Plaintiffs' claims. Both fraud and negligent misrepresentation require a causal link between the alleged improper conduct and the damages suffered by a plaintiff. *See Guilford Cnty.*, 247 N.C. App. at 82; *Brinkman., P.A.*, 155 N.C. App. at 742. Put another way, Plaintiffs must demonstrate that the alleged misrepresentations were relied on to their detriment and their damages flowed from these falsehoods. Gora's post-Deposit statements could not have been relied on by Plaintiffs to take actions related to funding that had already taken place. Moreover, the Bank of America account where Raycap wired the $2,765,000 deposit reached a balance of zero dollars on March 20, 2019. Therefore, any statements made by Richard Gora after that date could not have resulted in Plaintiffs' damages (the theft of the Deposit).[6]

Even assuming Gora's post-Deposit conduct is relevant, there is no evidence that Gora did anything more than relay information he obtained from Reinhart.[7] And as the Fourth Circuit's decision in *Schatz* teaches, a client's misrepresentations are not his lawyer's misrepresentations. *See Schatz v. Rosenberg*, 943 F.2d 485 (4th Cir. 1991). In *Schatz*, the plaintiffs, in selling a controlling interest in two companies, relied on documentation at closing which contained several misrepresentations and obscured the buyer's financial health. *Id*. After plaintiffs failed to receive

---

[5] It is telling that aside from the summary judgment standard and the elements of their causes of action Plaintiffs only cite one inapposite case in the entirety of their response.

[6] Plaintiffs could have potentially pursued a theory based on the delay of filing suit but when asked why they waited to pursue legal action the corporate representatives for both Noble and Raycap refused to answer the question. *See* Doc. No. 175-1, 175-2. As such, there is no evidence from which a jury could find for them on that theory.

[7] Plaintiffs contend that Defendants failed to verify the funds in the Pinnacle transaction and the US Bank documents in the Noble transaction and recognize the irregular deposit amount. Plaintiffs also argue Defendants failed to follow up on Reinhart's "repeated lies." *See* Doc. No. 176.

payment on the promissory notes, they sued the law firm who represented the buyer for common-law fraud and securities fraud, alleging, in part, that the law firm "committed fraud by . . . making affirmative misrepresentations about [its client's] financial condition." *Id.* at 488-89. In dismissing plaintiffs' fraud claim, the Fourth Circuit reasoned that "[the law firm's] alleged transmission of [its client's] misrepresentations does not transform those misrepresentations into the representations of [the law firm]." *Id.* at 495. As such, the Court concluded that an attorney "cannot be liable for the representations of a client, even if the lawyer incorporates the client's misrepresentations into legal documents or agreements necessary for closing the transaction." *Id.* Here, as in *Schatz*, Plaintiffs have not proffered any evidence that Gora was doing anything other than transmitting his client's representations, which does not make him liable for his client's misrepresentations. While it may have been wiser for Gora to verify these statements, his failure to do so does not make him liable for fraud.

Secondly, Plaintiffs assert that they relied on Gora's status as an attorney to make the Deposit, enter into the Secured Loan Agreement, and in not contacting the FBI. But again, Richard Gora's status as Reinhart's attorney cannot support fraud or negligent misrepresentation claims because he was no doubt Reinhart's attorney. To permit an attorney to be liable for fraud or negligent misrepresentation because he truthfully stated that he was representing a client would eliminate the requirement of a false statement, omission, or misrepresentation under these claims.

In a similar vein and third, Plaintiffs argue that Defendants should have terminated their attorney-client relationship with Reinhart due to its conduct during the Pinnacle and Noble deals. But whether it was wise for Defendants to continue their relationship with Reinhart is not the question before the Court. The question before the Court is whether Defendants made a "false representation or concealment of a material fact" or mislead Plaintiffs with "information prepared

10

without reasonable care." Defendants' failure to terminate their relationship with Reinhart is neither. Indeed, it is not even a representation. It is simply a fact. Plaintiffs' decision to rely on this fact was their own and cannot support claims for fraud and negligent misrepresentation.

**IT IS THEREFORE ORDERED THAT** the Defendants Gora LLC, and Richard Gora's Motion for Summary Judgment, (Doc. No. 174), is **GRANTED**. The clerk is ordered to close this matter in accordance with this Order.

**SO ORDERED**

Signed: August 24, 2023

Kenneth D. Bell
United States District Judge